WETHERELL v. MARION COUNTY.

Contract: PHYSICIAN: DUTIES OF. The term "duties of physician,"
as used in a contract between the plaintiff, as a physician, and the
board of supervisors of the county of M., for the performance by
him of professional services for the paupers of said county at the
poor-house therein, was held to include, in its general and ordi-
nary acceptation, the usual cases of surgery as well as the adminis-
tration of medicine.

*Appeal from the Marion District Court.*

SATURDAY, OCTOBER 9.

ACTION to recover for medical attendance at poor-house,
for two months, under contract with the county. The
claim was presented to the board of supervisors, and
was rejected by them. The petition avers that on June
6th, 1867, the board of supervisors of Marion county
adopted the following resolution: "Resolved, by the
board of supervisors of Marion county, Iowa, that the
committee on poor, etc., be authorized and required to
receive bids until to-morrow morning at ten o'clock, from
physicians, with reference to medical treatment of the
paupers of the county in the poor-house; the time em-
braced in such bids to expire on the first of March, 1868,
and said physician to be subject to the call of the super-
intendent of the poor-house; and to furnish all medicines
necessary; the basis of selection to be qualification and
cheapness."

The plaintiff made the following bid thereunder, to wit:
"I hereby agree to perform the duties of physician for
paupers of Marion county, Iowa, at the poor-house in
said county, for the term ending March 1, 1868, for the
sum of three hundred dollars, and furnish medicines

necessary, per annum." This bid was accepted by the board of supervisors, and thereunder plaintiff rendered the services sued for.

The defendant for answer averred, that, at the time said contract was entered into, and during the whole of said term, there was in the poor-house, and in charge of the superintendent thereof, a male pauper, then about two years old, who had a certain deformity known as "*talipes varus*," or "club foot," which deformity affected both his lower extremities, and was a curable infirmity, by timely and proper surgical treatment. That it was plaintiff's duty, under the contract, to treat said pauper and cure him, but which he failed and refused to do although often requested; that in consequence of his failure defendant was compelled to employ a physician to treat said pauper, and that to do and perform the services which plaintiff failed to perform under his contract was worth the sum of seventy-five dollars; wherefore defendant was damaged in that sum.

To this answer the plaintiff demurred, because the term "medical treatment and medicines" does not embrace "surgery;" and because, by the terms of the contract, plaintiff was not required to perform the surgical operation referred to in the answer. This demurrer was sustained, and defendant appeals.

*Atherton & Shoup* for the appellant.

*Stone, Ayres & Curtis*, for the appellee.

COLE, J.—The question presented by the demurrer, and argued at length in this case, is one of construction of the contract between the parties. It is not alone as to the meaning of the words "medical treatment and medicines," as implied by the demurrer and argued by coun-

sel, but as to the proper construction of the entire contract, including the bid or offer by the plaintiff, as well as the resolution of the board of supervisors inviting it. These, together with the acceptance of the bid, constitute the one contract. By reference to the preceding statement, it will be seen that the plaintiff, by his bid or offer, did not limit his proposed services to "medical treatment," but he proposed "*to perform the duties of physician* for the paupers of Marion county at the poor-house therein." The language of this contract is not to be construed in its technical or limited sense, but in its ordinary and common acceptation. 2 Pars. on Cont. 12, and notes; *Schuylkill Nav. Co.* v. *Moore*, 2 Wharton, 491. The "duties of physician," in their general, common and ordinary acceptation, do include the usual cases of surgery as well as the administration of medicine. And it may perhaps be questioned, whether in pure professional parlance, the "duties of physician" would not include *surgery* as well as *medicine;* and this because, in the universities of this country, as in France, and in most of the universities throughout the world (England alone excepted), the common degree of doctor of medicine and surgery is given. They are not separated by the scientists themselves, and the degree of doctor of medicine given to one class, and doctor of surgery to another; although these graduates do sometimes, but not often, make the one or the other a *specialty* in their professional lives.

If we were, therefore, driven (as perhaps we are not) to determine, as a matter of legal construction, the meaning of the terms "duties of physician" and "medical treatment," we should not hesitate long in deciding that they, like the degrees or diplomas of those who practice them, include both medicine and surgery.

But in this case, the answer, as if to avoid the question of legal construction, distinctly averred as a fact, that

Wetherell v. Marion County.

under the contract it became the duty of the plaintiff to treat said case, and that upon being requested he repeatedly promised to do so, but failed and neglected it. We must not, however, be understood as deciding or intimating that the peculiar case stated in the answer would necessarily fall within the duty of treatment by a physician and surgeon employed, as was plaintiff, for a limited time. That is to say, natural deformity, such as club-foot, hare-lip, cross-eyes and the like, may not fall within the class of surgical operations embraced in such contract as forms the basis of this action. Such deformities may or may not be treated advantageously or may or may not require treatment this month or this year. They are not like a broken or diseased limb, requiring prompt and immediate setting or amputation. Whether a club-foot should be treated at a particular time is a question of fact embracing a much wider range of inquiry than ordinary surgical operations : and it is to be determined like other questions of fact, and not as a matter of law.

It is urged in argument by appellee's counsel that the answer does not contain any averment that the county had paid out any money or been otherwise damaged in consequence of the plaintiff's neglect; and that the county could not recover for any damage to the pauper. But this question was not made by demurrer or otherwise in the court below and cannot therefore be made here. If made and sustained by the District Court, the defendant might have amended instead of standing upon his demurrer ; and he ought not to be deprived of this privilege by deciding the question against him for the first time in this court.

Reversed.